ESTATE OF CHARLES H. GREENWOOD, DECEASED, KENNETH R. GREENWOOD, ADMINISTRATOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 104987.    Promulgated April 3, 1942.

*John M. Schwartz, Esq.*, for the petitioner.
*Frank T. Horner, Esq.*, for the respondent.

834

836

OPINION.

DISNEY: The question which we are required to answer here is whether under the law of Arizona decedent's wife had a community property interest to be excluded from the computation of his estate. We are, of course, controlled herein by state law. *Black* v. *Commissioner*, 114 Fed. (2d) 355. See also *Talcott* v. *United States*, 23 Fed. (2d) 897.

The property involved is personalty, consisting of stocks and bonds, largely corporate stock of the Carborundum Co.; also cash. A portion of the property, the amount not shown except that it was "sizeable", was inherited by the husband, and inherited property is by the Arizona statute specifically excepted from community estate, so that with such a record we could not determine that any of the property was

originally community. The evidence clearly indicates that the husband separately acquired the property prior to removal to Arizona. The petitioner pointedly disclaims any contention that the property was originally acquired as community property. We therefore hold that the property was originally the separate property of the decedent. The petitioner states the question as follows: "The primary question presented is that of transmutation by understanding and intention." We therefore examine the record to ascertain whether under all of the evidence it is shown that property originally separately owned by the decedent became that of a marital community in Arizona. The petitioner relies in substance upon the idea that there was a general understanding between the husband and wife that their property was held as community estate, and upon statements which the husband made to the effect that half belonged to her and that the property was community. There was no written communication, understanding or document on the subject. The husband made such statements on two occasions to a friend and upon one occasion, in the presence of such friend and in the course of a family argument, the wife said to her husband, "You know, Charles, that one-half of all we own belongs to me", to which the husband stated, "That is correct, and I know it as well as you do." This is the only occasion shown by the evidence where any agreement between husband and wife expressly appears. It is obvious, of course, that the oral statements above recited do not amount to a conveyance. The petitioner, however, urges that under the law of California such statements suffice to transmute separate property into community estate and urges us to follow such decisions. Under the law of California an executed oral agreement is sufficient transmutation of separate property into community. *Schipper* v. *Penkalski*, 115 Pac. (2d) 231; *Yoakam* v. *Kingery*, 126 Cal. 30; 58 Pac. 324; *Estate of J. Harold Dollar*, 41 B. T. A. 869; *United States* v. *Goodyear*, 99 Fed. (2d) 523. *Title Insurance & Trust Co.* v. *Ingersoll*, 94 Pac. 94; and *Kaltschmidt* v. *Weber*, 79 Pac. 272, indicate that in California express agreement need not be shown if it is proven by the nature of the transaction or surrounding circumstances. *Estate of Joe Crail*, 46 B. T. A. 658.

We have for consideration here, however, not only the oral expressions above noted, but also documents in writing, signed by both husband and wife. In 1928, the year following that in which the decedent moved to Arizona, and several years before the family argument and statement above referred to, petitioner and his wife signed a contract of rental of safety deposit box from the Southern Arizona Bank & Trust Co. Therein, over their signatures, it is stated that they declare and represent that they own as joint tenants with the right of survivorship all of the property within or which may be deposited in the box, and that it shall be and is owned by

them as such joint tenants. They jointly and severally authorized the bank to grant access to either of them, and jointly and severally obligated themselves to save the bank harmless. Further reference is made to the survivor. It is recited that the signers have read, received a copy of, and approved the bank's rules covering safe deposit boxes as printed on the reverse side. On the reverse side reference is made to the survivor.

On or about January 5, 1928, a checking account was opened in the same bank in the name of "Greenwood, C. H., or Albertine, Either, or Survivor of Either", that expression appearing on the signature cards which bear the signatures of C. H. Greenwood and Albertine Greenwood. In 1934 a savings account was opened in the same bank by "Greenwood, C. H. or Albertine", that expression appearing upon the signature card bearing the signatures of C. H. Greenwood and Albertine Greenwood.

All of the personalty and assets involved in this case, consisting of stocks, bonds, certificates, and documents of title, was, at the date of the death of the decedent, in the safe deposit box above described. Of the cash, $3,553.52 was in the joint checking account in the Tucson bank, $4,320.01 in the savings account therein, and $18,834.74 represents savings accounts in decedent's name in other banks. It is apparent that, if the decedent and his wife were at the date of his death the owners in joint tenancy of the property deposited in the safe deposit box and in the joint checking account, such property must be included in the gross estate of the decedent, under the provisions of section 302 (e), Revenue Act of 1926.[1] Moreover, the language of the act seems specifically to cover the deposits both in safe deposit box and checking account. The petitioner argues that the doctrine of survivorship is not favored by the law in Arizona, and that it is a matter of intention on the part of the parties, *In re Baldwin's Es-*

---

[1] Sec. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

(e) To the extent of the interest therein held as joint tenants by the decedent and any other person, or as tenants by the entirety by the decedent and spouse, or deposited, with any person carrying on the banking business, in their joint names and payable to either or the survivor, except such part thereof as may be shown to have originally belonged to such other person and never to have been received or acquired by the latter from the decedent for less than an adequate and full consideration in money or money's worth: *Provided,* That where such property or any part thereof, or part of the consideration with which such property was acquired, is shown to have been at any time acquired by such other person from the decedent for less than an adequate and full consideration in money or money's worth, there shall be excepted only such part of the value of such property as is proportionate to the consideration furnished by such other person: *Provided further,* That where any property has been acquired by gift, bequest, devise, or inheritance, as a tenancy by the entirety by the decedent and spouse, then to the extent of one-half of the value thereof, or, where so acquired by the decedent and any other person as joint tenants and their interests are not otherwise specified or fixed by law, then to the extent of the value of a fractional part to be determined by dividing the value of the property by the number of joint tenants.

*tate*, 71 .Pac. (2d) 791, and suggests that the right of survivorship in that state may have been abolished. However, upon examination of the Arizona statute and construction thereof by the Supreme Court of Arizona, we find that if the instrument expressly vests estate in the survivor, the right of survivorship exists, although proof of a contrary intention on the part of the parties would suffice to destroy the joint ownership. *In re Baldwin's Estate, supra; Blackman* v. *Blackman*, 43 Pac. (2d) 1011. Examination of the contract signed and entered into by the decedent and his wife in renting the safe deposit box containing the larger portion of his estate indicates clearly to us that the instrument does "expressly vest the estate in the survivor" under the Arizona statute, section 986, Revised Code Arizona 1928, and negatives any idea of a contrary intent on the part of the signers. The provisions of such written agreement were never revoked nor modified throughout more than ten years prior to the death of the decedent.

Agreements as to safe deposit boxes essentially the same as that above described have been held to preclude claims of community property by the California courts. *In re Harris' Estate*, 147 Pac. 967, involved a claim of community property. The husband and wife had orally agreed that property should be owned as joint tenants and their moneys were deposited in a bank in a joint account with a written agreement in the pass book reciting joint tenancy and survivorship. It was held that there was joint tenancy. The same court in *In re Gurnsey's Estate*, 170 Pac. 402, considered a bank deposit in form to be paid to either husband or wife or the survivor, additions to become the property of the persons making the deposit as joint tenants, and concluded that community property deposited in such account passed out of the community at the time of the deposit and became the joint property of the husband and wife. In *In re McCoin's Estate*, 50 Pac. (2d) 114, it was held that a husband and wife having community ownership of money converted same into joint ownership by the terms of a signed signature card similar to that hereinabove described. The card bore the recitation that the undersigned gave each other a joint ownership in moneys deposited or thereafter to be deposited, payable to either or the survivor. *Young* v. *Young*, 14 Pac. (2d) 580, involved a question of community property or joint estate in connection with the renting of a safe deposit box by a husband and wife, as herein, and which safety deposit box contained the personal property in question—stocks and bonds. An agreement in writing between husband and wife in renting the safety deposit box recited a declaration that the contents then or thereafter should be joint property with ownership in the survivor. In addition, somewhat similar to the situation herein, the husband and wife opened a "deposit account" in another bank with

an agreement signed to the effect that moneys deposited should be paid by the bank to either or the survivor. The court held that the property was joint and not community estate, although the personal property involved was placed in the safe deposit box by the husband, whose executor contended that it was community as against the wife's claim by right of survivorship.

The above decisions clearly indicate, we think, not only the weight which should be given to the agreement of joint ownership as to the safe deposit box and the joint bank account, but refute the petitioner's contention that joint tenancy can not be created by one person conveying to himself and another as joint tenants. In that respect see also *Colson* v. *Baker*, 87 N. Y. S. 238; *In re Gaines' Estate*, 100 Pac. (2d) 1055; *In re Nelson's Estate*, 286 Pac. 439. In the light of such decisions we conclude that the evidence of oral understanding or agreement between the husband and wife here involved is not sufficient to indicate a change from the joint estate set up in writing in the safe deposit agreement and in the agreement as to the checking account. Indeed, it seems to us that in the light of such written agreement the oral statements later are explained and that they refer to the joint tenancy set up in writing. The oral references to community property and to ownership as half in each of the spouses may well have referred, in the minds of the decedent and wife, as laymen, to the joint estate in the property in bank. At least we think such references do not negative the written agreements or show an executed oral agreement sufficient under primary rules of law to overcome a previous written contract. We therefore hold that all property in the safe deposit box and in the checking account payable to either or the survivor was not community property, but joint estate, to be included in the estate of decedent. The record indicates plainly that the property did not originally belong to the survivor within the exception recited in section 302 (e) of the Revenue Act of 1926.

As to the remainder of the decedent's estate not appearing to have been covered by the written agreements as to joint ownership: We conclude that the evidence is not sufficient to indicate community property. Assuming that an oral understanding is sufficient to transmute separate estate into community property, under the law of the state in question, we note that the evidence as to oral agreement placed all property in the same category—the contention being that all was community and that everything was owned in like manner by the husband and wife. Having concluded that almost the entire estate was held in joint tenancy, we believe this indicates that the remainder was so held; or, if not, that the effect of the written evidence as to joint tenancy is such as to indicate that the separate estate of the husband in the other bank accounts is not shown to have been trans-

muted into community estate. The evidence is that all of his assets, including documents of title and certificates, were in the safe deposit box—which we above concluded contained property held by joint tenancy. The box, therefore, apparently contained the certificates of deposit by the husband in the other separate bank deposits in Massachusetts; Phoenix, Arizona; and Los Angeles, California, for they obviously are covered by the expression "assets, securities and other documents of title" and "certificates" used to describe the contents of the safe deposit box. Certainly that they were not in such box is not shown by the record. The oral understanding relied upon by the petitioner can not, we think, overcome the presumption of correctness of the Commissioner's determination as to any property, in the light of our conclusion as to the written agreements covering the joint bank accounts and deposits, for no distinction is made in the evidence as to oral agreement sufficient to separate one bank account from the other. Moreover, we find that section 265, Revised Code Arizona 1928, particularly provides that:

Whenever a husband and wife open a joint account with any bank, and either one dies, such bank shall pay to the survivor the amount standing to their joint credit and upon making such payment such bank shall be released from all further liability for such amount.

This section places the savings account in the Tucson bank in the same category as the other accounts where "survivor" is used. Since all bank accounts shown to enter into the computation of the estate, except those which we have above concluded represent joint estate, are in the name of the decedent, and certificates therefor were apparently in the joint safe deposit box, we conclude and hold that no sufficient showing of community estate therein has been made, and that error on the part of the respondent is not shown.

*Decision will be entered under Rule 50.*