Archie M. Koyl v. Commissioner. Fawn A. Koyl v. Commissioner. Archie M. Koyl and Fawn A. Koyl v. Commissioner.
Koyl v. Commissioner
Docket Nos. 48336-48338.[1]
United States Tax Court
T.C. Memo 1957-130; 1957 Tax Ct. Memo LEXIS 121; 16 T.C.M. (CCH) 586; T.C.M. (RIA) 57130; July 17, 1957
*121 1. Respondent concedes that the separate returns of Fawn Koyl for the years 1946 and 1947 were not false and fraudulent. With respect to the year 1946, the statutory notice of deficiency was mailed to her more than five years after her return was filed. As to 1947, the statutory notice was mailed more than three but less than five years after her return was filed. She omitted from said return gross income in an amount in excess of 25 per centum of the gross income reported. Held, that assessment and collection are barred by the statute of limitations as to Fawn Koyl for 1946 but not for 1947. Section 275(c). Respondent concedes that no additions to tax are to be determined as to Fawn Koyl under section 293(b) for either of the years 1946 or 1947. 2. Petitioner Archie Koyl concedes that for the years 1946 and 1947, for which he filed individual returns, additions to tax under section 293(b) are to be determined. Petitioners Archie and Fawn Koyl concede that for the year 1948, for which they filed a joint return, additions to tax under section 293(b) are to be determined. For the year 1949, for which petitioners filed a joint return, petitioners, through their counsel, agreed that *122 they would not oppose application of additions to tax under section 293(b) provided the Court determined that any deficiency for 1949 arose from the same type of income referred to in prior years, i.e., constructive dividends from Gene Clark, Inc. The Court having so determined, it is held that additions to tax under section 293(b) will be applied for 1949. 3. Held, (a) that petitioners, who filed separate returns for 1946 and 1947 on the community property basis and joint returns for 1948 and 1949, received informal or constructive dividends from Gene Clark, Inc., in the years 1946, 1947 and 1949 which were not reported for income tax purposes (1946, however, being barred by limitations as to Fawn Koyl); (b) that petitioners received business income in the year 1948 which was not reported for income tax purposes; (c) that petitioners realized capital gains for the year 1948 in excess of the amount reported, and received capital gain for the year 1949 which they did not report. Understatements determined as to Archie Koyl for the years 1946 and 1947, Fawn Koyl for the year 1947, and Archie and Fawn Koyl for the years 1948 and 1949. Walter M. Campbell, Esq., and George M. Bryant, Esq., *123 for the petitioners. Sidney Machtinger, Esq., and Earl J. Gardner, Esq., for the respondent. FISHER
Memorandum Findings of Fact and Opinion FISHER, Judge: This consolidated proceeding involves deficiencies in income tax and additions to tax determined against petitioners as follows: Additions to tax
Petitioner
Year
Deficiency
Sec. 293(b)
Archie M. Koyl
1946
$4,393.36
$2,196.68
Archie M. Koyl
1947
3,649.85
1,824.92
Fawn A. Koyl
1946
4,393.35
2,196.68
Fawn A. Koyl
1947
3,649.85
1,824.93
Archie M. Koyle and Fawn A. Koyl
1948
4,521.06
2,260.53
Archie M. Koyl and Fawn A. Koyl
1949
9,614.28
4,807.14
The parties stipulated at the trial that no fraud was claimed by respondent as to the individual returns of Fawn A. Koyl for the calendar years 1946 and 1947; that petitioners would not oppose the assessment of additions to tax under section 293(b) as to any deficiency found by the Court with respect to the returns of Archie M. Koyl for 1946 and 1947, and the joint returns for 1948. Petitioners also agreed that they would not oppose the assessment of section 293(b) additions to tax for 1949, provided the Court determined that any deficiency for 1949 arose from the same type of income referred to in prior years. Other than *124 the foregoing, issues presented for our consideration are: (1) whether petitioners received informal or constructive dividends from Gene Clark, Inc., in the years 1946, 1947 and 1949 which were not reported for income tax purposes, and if so in what amounts; (2) whether petitioners received business income in the year 1948 which was not reported for income tax purposes, and if so in what amounts; (3) whether petitioners realized capital gains for the year 1948 in excess of the amount reported, and unreported capital gain for the year 1949; and (4) whether the statute of limitations bars the assessment and collection of deficiencies determined as to Fawn Koyl for the taxable years 1946 and 1947. Findings of Fact Some of the facts are stipulated, and are included herein by this reference. Petitioners Archie M. Koyl and Fawn A. Koyl were at all times material herein husband and wife. During the calendar years 1946, 1947, 1948 and 1949, they resided in Los Angeles County, California, and were the parents of two minor children, David T. and Rodney Koyl. All income derived by petitioners during the years involved herein was community income. For the calendar years 1946 and 1947, petitioners *125 filed separate income tax returns on the community property basis and for the calendar years 1948 and 1949, petitioners filed joint income tax returns, all of said returns being filed with the collector of internal revenue at Los Angeles, California. Prior to April 23, 1946, Archie M. Koyl (hereinafter sometimes called petitioner) and Gene O. Clark were associated in a business venture known as Gene Clark Plumbing Co. (hereinafter sometimes referred to as the Plumbing Co.) consisting of two shops, located in El Monte and Bell Gardens, California. The Plumbing Co. was engaged primarily in selling plumbing materials wholesale and rendering plumbing services to building contractors. On April 23, 1946, petitioner and Clark organized a California corporation known as Gene Clark, Inc., now known as Atlas Pipe and Supply Company, (herein sometimes called the corporation) which engaged in the wholesale plumbing business. Of the 522 shares of $100 par value stock authorized, 364 shares were issued to Gene Clark, president of said corporation and 157 shares to Archie Koyl, vice president. One qualifying share was issued to another individual who is not involved herein. Petitions's shares represented *126 an ownership interest in said corporation of approximately 30 per cent. The two officer-stockholders agreed to divide the earnings of Gene Clark, Inc., on a 70-30 per cent basis, Koyl to receive 30 per cent thereof. Gene Clark, Inc., commenced its business operation as of May 1, 1946, occupying the same premises as the Plumbing Co. The corporation kept its books on an accrual method and reported its income on a fiscal year basis beginning with the year ending April 30, 1947. Gene Clark was in charge of the main office in El Monte and also was in general control of the over-all corporate operations, including its financial policies. Archie Koyl was in complete charge and managed the Bell Gardens branch office. Clark made most out-of-state purchases of materials for the corporation, while petitioner purchased virtually all of the plumbing supplies and some of the equipment available from local vendors. Soon after incorporation, the two officer-stockholders had certain differences between them relating to business operations and the division of corporate profits, culminating in petitioner's decision late in 1947 to sell his entire stock interest in the corporation to Clark. After a series *127 of negotiations, the sale of petitioner's interest therein was consummated some time between February 1, 1948, and March 31, 1948, by assignment, Bill of Sale and Releases dated March 29 and 31, 1948. The documents above referred to, filed as petitioners' Exhibits 1 and 1(a), are incorporated herein by reference. Some time after leaving Gene Clark, Inc., petitioner prepared to re-enter the plumbing business in Bell Gardens, forming a corporation for this purpose. Thereafter, in December 1948, Clark informed Koyl that he desired to sell out his entire interest in Gene Clark, Inc., to petitioner. On January 29, 1949, Koyl purchased all of Clark's stock (522 shares) in the corporation, and remained its sole stockholder during the balance of the period involved herein. During the fiscal years ended April 30, 1947, to 1950, inclusive, the proportional stock ownership in Gene Clark, Inc., is summarized as follows: Date
Clark
Koyl
May 1, 1946, to February 1,
1948
70%
30%
March 31, 1948, to January
29, 1949
100%
January 29, 1949, to April 30,
1950
100%
During each of the years in which Koyl was an officer and stockholder of Gene Clark, Inc., substantial but undisclosed amounts of receipts from sales made *128 by the corporation were neither recorded on its books nor reported on its income tax returns. While the methods by which these omissions were accomplished were largely devised by Clark, Koyl was aware that such omissions occurred and to some extent participated therein. Such activities continued, but to a lesser extent, after Clark sold his stock to Koyl and ceased to participate in the business of the corporation. The diversions hereinafter found (and considered infra in our Opinion) which respondent maintains were constructive dividends to Clark and Koyl derive from Gene Clark, Inc. The net income per return of Gene Clark, Inc., and the corrected net income as stipulated by the parties was as follows: Fiscal
Net Income
Net Income
Year
Per Return
Per Stipulation
1947
$30,632.10
$110,087.02
1948
16,726.40
89,248.90
1949
(4,154.03)
20,200.60
1950
4,574.91
83.71
The parties have also stipulated that the deficiencies in tax and additions to tax of Gene Clark, Inc., are as follows: Additions to tax
Year Ended
Deficiency
Sec. 293(b)
4/30/47
$35,299.68
$17,649.84
4/30/48
29,928.74
14,964.37
4/30/49
4,550.15
2,275.08
The total accrued taxes of Gene Clark, Inc., for the fiscal years set forth below, after reflecting the *129 stipulated deficiencies, the taxes per return, and a refund of $2,201.63 for fiscal 1947 (but excluding additions to tax under section 293(b)) are as follows: Fiscal Year
Total Accrued Tax
1947
$41,833.07
1948
33,675.81
1949
4,550.15
Fred Files, comptroller and office manager of the corporation, worked under the immediate supervision and direction of Clark. Files' duties consisted primarily of handling receipts from sales and keeping office books and records. Clark instructed Files as to which sales were to be recorded. On a number of occasions, Clark directed the comptroller to set aside cash proceeds from certain sales and to turn such funds over to him. Also, at different times, Clark would give Files checks made out to the corporation by customers for sales, which sales were unreported on the corporate books, in exchange for cash taken by Clark. Part of the cash proceeds was used by the officerstockholders to cash checks as an accommodation for neighborhood stores and workmen in relatively small sums. Gene Clark, Inc., by using a "retail sales receptor" in its sales office which issued customer sales receipts without making any correlative recording on corporate books during the years *130 in issue, took in approximately $52,485.17 of gross receipts, which were neither deposited in its bank accounts nor reflected on its returns. By means of this and other devices, there was a substantial excess in the amount of cash sales actually made by the corporation over the amount of cash Files recorded in the corporate books or deposited in its bank accounts. After Clark left the business, the foregoing method of handling cash sales continued to be a practice of the corporation (though to a lesser extent), and petitioner still withheld a substantial, though undisclosed, amount of unreported sales proceeds. Petitioner had an arrangement with Keenan Pipe and Supply Co. whereby he was able to purchase materials on behalf of the corporation at one-third off for cash. During the years in question, an indeterminate amount of such purchases were made and paid for with unreported corporate funds, the parties agreeing not to keep any records of their transactions. Part of the cash funds used for such deals was kept by the corporation in a safety deposit box in Maywood, in the joint names of the two officer-stockholders, and in another box in the El Monte Bank of America, California, in *131 Clark's name. During the taxable year 1946, petitioners used the following corporate checks for their own benefit, the amounts of which they failed to report on their separate returns for that year: 1. Corporation's check #3031 to C. A.
Andrews for room fixtures in peti-
tioners' home
$48.95
2. Corporation's check #3070 to Ralph's
Lumber Co.
26.73
3. Corporation's check #3053 to Harris
Glass Co. for mirrors in petitioners'
home
68.63
During the taxable year 1947, petitioner used a corporation check in the amount of $10.25 to make a personal purchase of flowers from the Mel Flower Shop. He also deposited a corporation check from Harry McCabe, dated October 3, 1947, in the amount of $826 to his personal account. During December 1947, petitioner cancelled the corporation's account receivable balance of $5,000 due from Charles Hasekian on the corporate books, in exchange for real estate owned by Hasekian. Koyl took title to said realty in his own name. None of the foregoing amounts received from Gene Clark, Inc., during 1947, were reported as income on petitioners' separate returns. During 1947 Koyl received a check in the amount of $1,900 from Charles Hasekian dated June 13, 1947, in consideration *132 of an account receivable owing Gene Clark, Inc., for plumbing services. Koyl cashed the check and failed to turn the cash proceeds over to the corporation. No part of it was reported as income on petitioners' separate returns. Petitioner received a check from Ben Lang dated September 29, 1947, in the amount of $1,840 in consideration of an account receivable owing Gene Clark, Inc. On January 29, 1948, Koyl purchased a truck (ordered on behalf of Gene Clark, Inc. , several months before) from Maurice J. Sopp and Son, Huntington Park, California, for $3,410.62. Koyl used the proceeds of the Lang check as part of the purchase price of said truck which he put in his individual name to be used on a Kansas farm which he owned. The amount of said check was not reported on petitioners' joint return. Petitioner received another check dated August 29, 1947, from Ben Lang in the amount of $1,805.50 in consideration of an account receivable owing Gene Clark, Inc., which he did not deposit to the corporate bank account or use for corporate purposes. Koyl retained said check for his own personal benefit, but petitioners failed to report the amount thereof as income on their separate returns for *133 1947. During the calendar year 1948, Koyl deposited in his own account corporate receipts from the sources referred to below which petitioners failed to report as income on their joint return for that year: Item
Amount
Monte Frodsham, 1-12-48
$ 600.00
Ben Lang, 1-22-48
1,055.50
Monte Frodsham, 2-2-48
850.00
Basford & Edwards, 8-6-48
59.50
Basford & Edwards, 8-6-48
20.00
During 1948 petitioners deposited $8.50 representing unreported interest income of the corporation in the Citizens National Bank in the name of Fawn Koyl, trustee for her son, David T. Koyl, which they failed to report as income on their joint return for that year. Petitioners also made bank deposits during 1948 in the Citizens National Bank, Maywood Branch, California, among others, in the amount of $6,437.09. Of said amount, the bank account reveals that petitioner deposited corporate checks received from Pacific Pumps (dated May 17, 1948) in the amount of $1,013.86, and two other checks from Basford and Edwards (dated August 6, 1948) in the amounts of $59.50 and $20, respectively. There were also two deposits to the account of Fawn Koyl, trustee for her son, David Koyl, and fifteen deposits to the account of Archie Koyl. Petitioners *134 failed to report any of the foregoing amounts as income on their joint return for 1948. In the year 1948, Archie Koyl realized a long-term capital gain of $14,153.74 from the sale of 157 shares of stock of Gene Clark, Inc., to Gene O. Clark, of which $7,076.87 is to be taken into account. Koyl took a deduction of $2,880.86 on his 1948 return based on a claimed short-term capital loss. He reported net capital gain of $976.39 on said return. At the trial, he conceded additional net gain from the sale of capital assets in the amount of $3,219.62. During 1949 petitioners deposited $8.07, representing unreported interest income of the corporation in the Citizens National Bank, Maywood Branch, in the name of Fawn Koyl, trustee for her son, David T. Koyl. During the taxable year 1949, Koyl acquired 522 shares of stock in Gene Clark, Inc., from Clark for which Koyl paid him $10,000 in cash and transferred to him certain real estate and equipment as follows: Kansas Farm - real estate; Kansas Farm - buildings; Carmelita property; auto and trucks; machinery and equipment; office equipment. Petitioners did not report the foregoing transaction on their income tax return for 1949. Respondent determined *135 that the transaction resulted in a long-term capital gain in the amount of $6,836.10, of which 50 per cent is to be taken into account. Petitioners claim the transaction resulted in a loss. During the period when both petitioner and Clark were officer-stockholders of Gene Clark, Inc., it was their practice to draw corporate checks to themselves in amounts ranging between $500 and $600 each month, which they claimed to be for expenditures made in the ordinary course of corporate business, but the checks were not in fact expended for the designated purposes. In one of the years in question (the particular year being unspecified) petitioner purchased a home in Kansas for $18,750. He borrowed $10,000 from a bank, and Clark, using corporate funds, paid the bank $6,750 on behalf of Koyl to apply towards the purchase of said house. Petitioner failed to report the $6,750 on his tax return for any of the taxable years in issue. During the taxable period involved herein, (the particular year being unspecified) petitioner also received $4,300 from Clark as his share of corporate profits when the latter diverted approximately $10,000 from Gene Clark, Inc. Koyl used the money for home improvements, *136 and failed to include said amount as income on his return for any of the years in issue. In July 1946, after the corporation was advised that it could not own certain farm land in Kansas which it had considered buying, Clark purchased the farm land in his own name, using corporate funds as part of the consideration. Shortly thereafter, Koyl suggested that another farm be purchased in his name. After a desirable farm was located in Kansas, which cost $32,000, Koyl purchased it, obtaining a loan from the Independence State Bank, Kansas, in the amount of $12,500. Clark gave him $11,000 in cash and wrote a check on the corporation's bank account for the balance, making a total of $20,000. Petitioners did not include any part of the $20,000 as income on their tax returns for any of the years in question. Beginning on July 31, 1946, the two officer-stockholders maintained individual open accounts on the corporate books, designated as "Notes Receivable - Officers," to which extensive withdrawals were debited and partial repayments were credited. Their withdrawals were made at will, without provision for promissory notes, interest, or security. Some time before May 1, 1947, the "Notes Receivable *137 - Officers" account was scratched out (for some unexplained reason) and the account "Trust Deeds" was set up in lieu thereof. No trust deeds were ever turned over to Gene Clark, Inc., during the years involved herein. As of February 28, 1947, the individual withdrawals of the officer-stockholders in the "Trust Deeds" account show a total debit balance of $36,149.29 of which $25,304.50 was attributable to Clark, and $10,844.79 to Archie Koyl, the amounts withdrawn for the benefit of each being in direct proportion to their respective stockholdings. These withdrawals in the main related to the acquisition by Clark and Koyl of the Kansas farm lands. They were, in reality, constructive dividend distributions to Clark and Koyl, and were not, in fact, corporate investments or loans to the officer-stockholders. Fawn Koyl filed her individual Federal income tax return for the calendar year 1946 on March 15, 1947, reporting thereon gross income in the amount of $13,151.82. She filed her return for the taxable year 1947 on March 4, 1948, and reported gross income in the amount of $6,150. The notice of deficiency for the years 1946 and 1947 was mailed to her on February 20, 1953. Fawn Koyl omitted *138 from gross income in 1947 an amount properly includible therein which is in excess of 25 per centum of the amount of gross income stated in her 1947 return. Respondent concedes that there was no fraud in relation to the separate returns or deficiencies of Fawn Koyl for the years 1946 and 1947. Petitioner Archie Koyl concedes that for the years 1946 and 1947, for which he filed separate returns, additions to tax under section 293(b) are to be determined. Petitioners Archie and Fawn Koyl concede that for the year 1948, for which they filed a joint return, additions to tax under section 293(b) are to be determined. With respect to petitioners' joint return for 1949, their counsel stated at the hearing that no objection would be interposed to the fraud penalty, i.e., additions to tax under section 293(b), if a deficiency "appears of the type of income referred to in the prior years * * *." The deficiency for 1949 (to be determined under Rule 50) will include an amount attributable to the type of income referred to in prior years. Opinion Limitations We are concerned with the issue of the statute of limitations only with respect to the separate returns of Fawn Koyl for the calendar years *139 1946 and 1947. Respondent concedes that her returns for these years were not false and fraudulent with intent to evade taxes. On this issue, the respondent has the burden of proof. Lois Seltzer, 21 T.C. 398 (1953). With respect to the year 1946, we note that her return was filed on March 15, 1947, and that respondent's statutory notice of deficiency was mailed to her on February 20, 1953, more than five years later. There is no suggestion in the record that a waiver of the statute of limitations has been filed. It is thus apparent that the provisions of section 275(c) of the Internal Revenue Code of 1939 are not applicable, and since there was no fraud urged with respect to the return in question, assessment and collection of taxes are barred for 1946. For the calendar year 1947, Fawn Koyl's return was filed on March 4, 1948, (as of March 15, 1948). The statutory notice of deficiency was transmitted to her on February 20, 1953, more than three but less than five years after the return was filed. Again there was no waiver of limitations. Since it is conceded that there was no fraud, limitations will apply under section 275(c) unless she omitted from gross income an amount properly *140 includible therein in excess of 25 per centum of gross income stated in the return. The gross income stated in her return was $6,150, of which 25 per centum is $1,537.50. A schedule of understatement of income for 1947 (petitioner's Exhibit 10) submitted on behalf of the Koyls for the purpose of limiting their tax liability thereto for said year, concedes that Fawn Koyl's gross income for 1947 was $9,068.13, or $2,918.13 more than that included in her return, which latter amount is in excess of 25 per centum of $6,150. The statute of limitations, therefore, is not a bar to assessment and collection for the year 1947. We add for completeness that while we accept the figures admitted in the aforementioned schedule of unreported income for the purpose of resolving the limitations issue, we do not accept them as reflecting the full extent of her understatement of income for 1947 for the purpose of determining the deficiency for that year. As to Archie Koyl, no question as to limitations with respect to the years 1946 and 1947 was raised on brief and we assume the issue was abandoned as to those years in the light of the concession that additions to tax for fraud under section 293(b) are *141 to be applied, and that proof of fraud was waived as to Archie. Additions to Tax - Section 293(b)
As a basis for additions to tax under section 293(b), the burden is upon the respondent to establish that some part of the deficiency to which the addition is attributed was due to fraud with intent to evade taxes. In the instant case, however, fraud is conceded and proof as a basis for additions to tax is waived with respect to Archie Koyl's individual tax liability for 1946 and 1947, and with respect to the joint liability of Archie and Fawn Koyl for 1948. With respect to the joint return for 1949, petitioner's counsel stated that no objection would be interposed to the fraud penalty for that year if a deficiency "appears of the type of income referred to in the prior years * * *." We find for the respondent on this issue for the year 1949 as well as for the three earlier years in which fraud is unconditionally conceded. Koyl was in complete control of Gene Clark, Inc., during 1949. It is clear from the testimony of Files that the fraudulent practices continued in 1949, although to a lesser extent. While the deficiency (to be determined under Rule 50) will be small in amount, to the *142 extent attributable to the "type of income referred to in the prior years," it is clear that such a deficiency will arise, and we must give effect to the statement of petitioner's counsel referred to above which made it unnecessary for respondent to meet the burden of affirmative proof on the fraud issue for 1949. We add that the fact that the earnings available for dividends in fiscal 1949 were quite small in amount is by no means indicative of the absence of fraudulent practices on a substantial scale. The result derives, rather, from the accrual of income taxes of the company for fiscal 1949 and additions to tax under section 293(b) for the prior year. See Estate of Esther M. Stein, 25 T.C. 940 (1956) and discussion infra headed "Understatement of Income - 1949." In view of the foregoing discussion, it is unnecessary for us to consider, in relation to the fraud issue, the failure of petitioners to report the exchange transaction through which Koyl acquired Clark's stock in Gene Clark, Inc., in relation to which we have affirmed respondent's determination of capital gain. (See discussion of 1949 understatement infra.) Understatement of Income - 1946 For the year 1946, we are concerned *143 only with the liability of Archie Koyl, since assessment and collection for that year are barred by limitations as to Fawn Koyl. The respondent, in his statutory notice of deficiency, determined that Archie Koyl had failed to report informal dividends received from Gene Clark, Inc., in the amount of $9,477.25. The burden of proof rests with petitioner to show error in respondent's determination. American Pipe & Steel Corporation v. Commissioner, 243 Fed. (2d) 125 (C.A. 9, 1957) affirming 25 T.C. 351. By agreement of the parties, the revenue agent's report was received in evidence for the purpose of showing the basis for respondent's determination, but not as proof of the facts therein set forth. It is apparent from the statutory notice (as explained by the agent's report) that respondent's approach was first to calculate the earnings of Gene Clark, Inc., for the fiscal year ending April 30, 1947, which earnings he determined were distributed to Clark and Koyl as constructive dividends. Thirty per cent of such dividends were attributed to Koyl, in proportion to his stock ownership. Since Koyl's return was filed on a calendar year basis, while that of the corporation was on a fiscal *144 year basis, respondent attributed eight-twelfths of Koyl's share to calendar 1946, and divided the amount thereof equally between Archie and Fawn on the community property basis. The foregoing merely recites the basis of respondent's approach. We have not repeated the detailed calculation of the constructive dividend, because on the evidence and certain concessions and stipulations of the parties, we have reduced the amount of the dividend. Our own calculation will be set forth infra. Petitioner, citing Helvering v. Taylor, 293 U.S. 507, contends that respondent's determination is arbitrary and excessive and therefore invalid in its entirety. In support of this view, petitioner urges that the amount of the corporate earnings actually received by Koyl in money or property was not established, and that an allocation to him of 30 per cent of corporate earnings available for distribution was without rational foundation. We cannot accept this view. The burden is upon petitioner to show that the determination is arbitrary, and therefore invalid. Greenwood v. Commissioner, 134 Fed. (2d) 915 (C.A. 9, 1943), affirming 46 B.T.A. 832. It is apparent from the evidence that substantial amounts *145 of income of the corporation were unrecorded on its books and unreported for tax purposes by the corporation. Respondent had ample reason to infer that such money and property was retained for personal use by Clark or Koyl or both. The respondent had no means of ascertaining the precise amounts involved or the exact amounts withheld by Clark or Koyl because of the very fact that no records were kept and that the transactions were purposefully concealed. It is clear from the record, including Koyl's own handwritten communication to the Commissioner, that Koyl was well aware of what was going on, and that he participated to some extent in the diversions. It was reasonable for respondent to infer that Koyl had seen to it that he received his share in some approximate relationship to stockholdings. In the absence of records, the Commissioner was obliged to resort to some reasonably effective technique for the determination of Koyl's share of the income, and petitioner cannot, by condoning or cooperating with concealment, deprive respondent of the right to use a practical method of making his determination, which he is forced to adopt because of such concealment. We believe the methods *146 adopted by him and the results reached were neither arbitrary nor unreasonable under the circumstances. Jack M. Chesbro, 21 T.C. 123, 128 (1953), affirmed (C.A. 2, 1955) 225 Fed. (2d) 674. We next turn to the computation of the understatement. The net income, before taxes, of Gene Clark, Inc., for the fiscal year ending April 30, 1947, was $110,087.02 as stipulated by the parties. From this we deduct $41,833.07 representing Federal income taxes (after reflecting refund of $2,201.63 and accrued deficiency of $35,299.68) as set forth in our Findings. See Estate of Esther M. Stein, supra; Stern Brothers & Co., 16 T.C. 295 (1951). The balance of $68,253.95 represents earnings available for distribution. On the basis of respondent's approach, with which we agree, 30 per cent of the foregoing (or $20,476.19) is attributable to Koyl as a dividend, eight-twelfths of which (or $13,650.79) is allocable to the calendar year 1946. Petitioner does not raise any objection to the allocation of eight-twelfths to 1946 as a basis for reconciling the corporate fiscal year with the individual's calendar year, and has failed to establish error in attributing 30 per cent thereof to Koyl. On the community *147 property basis, one-half of this, or $6,825.39, constitutes a constructive dividend to Archie Koyl for that year. As aforementioned, the respondent determined the dividend to Koyl to be in excess of the above amount, but stipulations at the trial and our adjustments (reducing the amount of earnings of Gene Clark, Inc.) result in the reduction of the dividend to $6,825.79 as to Koyl. Petitioner has failed to demonstrate error in respondent's determination except to the extent of the adjustments which we have made. No such dividend or its equivalent was reported on the 1946 return of either Archie or Fawn Koyl. Petitioner admits receiving trifling amounts directly or indirectly from the corporation which were not included in the 1946 return of either his wife or himself. He denies receiving any more, but his testimony is wholly unconvincing. Petitioner argues that earnings of Gene Clark, Inc., available for distribution for fiscal 1947 should be further reduced by items of $6,000 (Truman Johnson), $49,210.15 (reverse deferred income) and $3,703.50 (bad debts reversed), totalling $58,913.65, which were characterized in the revenue agent's report as not available for distribution. Petitioners *148 do not contend that the items were not income to the corporation for fiscal 1947, and they would be precluded from doing so because all three items are included in Exhibit 19 (sheet 1, fiscal 1947) which sets forth the correct net income of Gene Clark, Inc., for the year in question as adjusted by stipulation. Petitioner urges, however, that the statement in the revenue agent's report amounts to a concession by respondent. We do not agree with this view. The statement in the report was merely an erroneous conclusion of law. The actual net earnings of Gene Clark, Inc., for fiscal 1947 are stipulated by the parties and supersede any net earnings figures calculated by the agent. We think it is clear that earnings available for distribution in the instant case must be determined on the basis of the stipulated data set forth in Exhibits 18 and 19. Section 115(a) of the Internal Revenue Code of 1939 provides in part as follows: "(a) Definition of Dividend. - The term 'dividend' when used in this chapter * * * means any distribution made by a corporation to its shareholders, whether in money or in other property, (1) out of its earnings or profits accumulated after February 28, 1913, or *149 (2) out of the earnings or profits of the taxable year (computed as of the close of the taxable year without diminution by any distributions made during the taxable year), without regard to the amount of the earnings and profits at the time the distribution was made. * * *" Section 115(b) provides, in part, as follows: "(b) Source of Distributions. - For the purposes of this chapter every distribution is made out of earnings or profits to the extent thereof, and from the most recently accumulated earnings or profits. * * *" [Italics supplied] We think there can be no doubt that upon the facts before us and under the foregoing provisions of the statute, all earnings and profits of Gene Clark, Inc., for fiscal 1947 (less accrued income taxes) were available for distribution and that the form of assets in which such earnings were reflected is immaterial. See also Regulations 111, section 29.115-2. Petitioner cites no authority to the contrary. Petitioner further contends, in much the same vein, that the amount of $30,632.10 net income for fiscal 1947 (less taxes thereon) reported on the original return of Gene Clark, Inc., for that period was retained in the business and was not distributed *150 to anyone. This item is not to be isolated from other earnings and profits. If petitioner's argument is intended to urge that such net income (after taxes) was not available for distribution, he again cites no authority in support of his views and our discussion supra is determinative. If he intends to urge that earnings and profits to the extent available for distribution were not in fact distributed, we need only say that respondent has determined otherwise and petitioner has failed to meet the burden of proving error (except to the extent set forth in our own calculation of lesser dividends, based upon corrected earnings as stipulated by the parties). There remains for our consideration the issue relating to the acquisition by Koyl of certain Kansas farm property. Respondent maintains that to the extent that the purchase price of the farm was furnished from funds of Gene Clark, Inc., said amount was a diversion of corporate funds to Koyl, and hence an undeclared or constructive dividend to Koyl to the extent that earnings were available for dividends. Petitioner, on the other hand, argues that said amount constituted an investment of Gene Clark, Inc., in farm land, and that the *151 title of the farm was taken in his individual name in order to circumvent Kansas law which forbade an out-of-state corporation from owning land. In the alternative, he argues that the withdrawals, at most, represented a series of loans to petitioner. The alleged investment or loan was reflected in an account denominated "Notes Receivable - Officers," later changed to "Trust Deeds." Koyl gave no note or trust deed to the corporation for the amounts of the purchase price which had come from corporate funds. The issue is one of fact and the intention of the parties is controlling. Carl L. White, 17 T.C. 1562, 1568 (1952). Many criteria have been used by the courts as aids in determining the intention of the parties. No one factor is alone conclusive. We must look to substance rather than form. Neither the language used nor the formalities followed preclude us from determining the true nature of the transaction. William C. Baird, 25 T.C. 387 (1955) and cases cited therein. The absence of any promissory notes or security, and the failure to charge or pay interest are not conclusive against petitioner on the basic issue. It is equally true, however, that the treatment of the withdrawals *152 on the corporate books as "notes receivable," while a factor to be considered, is not controlling, since it is established that book entries and records may not be used to conceal realities as a means of relieving the taxpayer from liability for income taxes. Ben R. Meyer, 45 B.T.A. 228, (1946); and cases cited therein. The same principle applies to the statements in the document dated March 28, 1948, referring to the sale of Koyl's stock to Clark, to which we have also given consideration. Although the law is well settled that the disbursement of corporate earnings need not be in proportion to stockholdings, it is noteworthy here that the withdrawals of Koyl and Clark recorded in "Notes Receivable - Officers" (later "Trust Deeds") account were, as of February 28, 1947, in exact proportion to their respective stock interests and in accord with their agreement to share in corporate earnings and profits. William C. Baird, supra. We also think it significant that it was only after Clark had acquired a farm that Koyl indicated that he, too, would like to own a farm. At the trial, Koyl testified as follows: "I wanted something in my name, as he had one, and I insisted that we get another *153 one and put it in my name." It is apparent that the purchase of the South Farm in Koyl's name was the consequence, and reflects the intention of an evening-up arrangement in proportion to their stockholdings. We are convinced, upon consideration of the entire record, that the withdrawals in issue during fiscal 1947 in the amount of $36,149.23 were not intended to be corporate investments or loans, but were, in reality, diversions of corporate funds to the officer-stockholders, taxable as dividends to them to the extent of earnings available for distribution as such under sections 115(a) and (b). Estate of Helene Simmons, 26 T.C. 409 (1956). We hold, consistent with the foregoing discussion, that the $10,844.79 withdrawn from corporate funds on behalf of Koyl representing 30 per cent of the debit balance of $36,149.23 in the Notes Receivable account as of February 28, 1947, was not a bona fide account receivable due from Koyl, or a corporate investment, but was in fact a constructive dividend in fiscal 1947. Respondent's determination is, in effect, that there were informal dividends to the full extent of the earnings and profits available therefor. The amount so available, after *154 concessions by stipulation and our adjustments, has been calculated above. Petitioner has failed to meet the burden of proving error, or that his share of such dividends was less than the amount attributed to him, except to the extent of the adjustments we have made. We hold, therefore, that he received taxable dividends in the year 1946 in the amount of $13,650.79, only one-half of which is taxable to him, however, since he and his wife filed separate returns on the community property basis. Understatement of Income - 1947 For the calendar year 1947, respondent, in his statutory notice of deficiency, determined that Archie Koyl had failed to report informal dividends from Gene Clark, Inc., in the amount of $21,214.70, one-half of which was ascribed to each petitioner as separate income. His approach in making this determination was the same in principle as that employed in computing the dividends received during the prior year, except that it was necessary to add four-twelfths of the corporate earnings available for distribution for the fiscal year 1947, to eight-twelfths of the available earnings for fiscal 1948. Since the resultant dividend has been reduced substantially to reflect *155 certain concessions made by the parties, we think it would serve no useful purpose to repeat respondent's calculation here. In redetermining the computation of the understatement, we use as a starting point the net income before taxes of Gene Clark, Inc., per stipulation (Exhibit 19) for the fiscal year ending April 30, 1948, which was $89,248.90. From this we deduct $51,325.65, representing total Federal taxes, (including accrued deficiency for fiscal 1948 of $29,928.74 and accrued addition for fraud for fiscal 1947 in the amount of $17,649.84, per stipulation of additions for fraud of Gene Clark, Inc. See Exhibit 18). Estate of Esther M. Stein; Stern Brothers & Co., both supra. The balance of $37,923.25 represents earnings available for distribution. On the basis of respondent's approach, with which we agree, 30 per cent of the foregoing (or $11,376.98) is attributable to Koyl as a dividend, eight-twelfths of which (or $7,584.66) would be allocable to the calendar year 1947. To this amount, it is then necessary to add $6,825.40, which is four-twelfths of the distributions to Koyl from fiscal 1947, as allocable to him in the calendar year 1947. The total constructive dividends to *156 Koyl for calendar 1947, therefore, amount to $14,410.06. On the community property basis, one-half of this or $7,205.03, would constitute a dividend to each spouse for that year. As aforementioned, respondent determined the dividend to each petitioner to be in excess of the above amount, but concessions at the trial and our adjustments reduce the amount of earnings of Gene Clark, Inc., available for distribution as dividends and result in the above calculation of a dividend of $7,205.03 ascribed to each petitioner. No such dividend or its equivalent was reported on the 1947 return of either Archie or Fawn Koyl. Petitioners introduced a schedule of understatements for calendar 1947 in which they admit diverting to themselves amounts totalling $5,836.25 which they failed to report on their separate returns for 1947. Petitioner suggests that, in allocating eight months of available earnings for the fiscal year ending April 30, 1948, to the calendar year 1947 in reconciling the fiscal year of the corporation to the calendar year of the taxpayer, no consideration was given to the alleged severance of Koyl's active connection with the corporation as of January 1, 1948, and the termination *157 of his stock ownership therein as of February 1, 1948. Petitioner does not deny, however, that his active participation and stock ownership continued for the full eight months beginning the fiscal year 1948, so that a termination of his interest in the early part of calendar 1948 would not affect the allocation of his share of distributions in respect of calendar 1947 from fiscal 1948. Under all of the circumstances, we do not think it was arbitrary or unreasonable for respondent to make the allocation complained of. Moreover, petitioner has failed to prove that the actual distributions to him in calendar 1947 out of earnings of the company for fiscal 1948 were less than the amount which we have attributed to him. Except for the foregoing, petitioner has advanced no arguments with respect to the year 1947 which have not already been discussed by us in principle in relation to the year 1946. We deem it unnecessary therefore to repeat our discussion. We hold that petitioners have failed to meet the burden of proving that each received less than $7,205.03 as ordinary (constructive) dividends taxable in the year 1947. Understatement of Income - 1948 Respondent makes no claim that petitioners *158 received any dividends from the corporation during the calendar year 1948. He determined, however, that petitioners failed to report additional income consisting of interest income diverted from Gene Clark, Inc., in the amount of $8.52; "business income" of $6,437.09; and additional long-term capital gain from the sale or exchange of capital assets to be taken into account in the sum of $10,959.78, making a total of unreported income of $17,405.39. Petitioners have conceded their failure to report the interest income of $8.52. We turn next to the so-called "additional business income" item. Respondent determined that a total of $6,437.09 deposited to petitioners' account in the Citizens National Bank, Maywood Branch, California, constituted "additional business income" to them which they failed to report on their joint return for 1948. The burden of proof is upon petitioners to show error in respondent's determination. The revenue agent's report was received in evidence for the purpose of explaining the basis for respondent's determination. In Schedule 1A of the report, the agent lists the deposits in question. Petitioners concede that two items involving Basford and Edwards totalling *159 $79.50 are correct, but claim that the balance of the deposits were either nontaxable or represent income reported on their return. Of the deposits claimed to represent nontaxable receipts, none correspond with the list on the revenue agent's schedule, and there is thus no support for the view that the agent charged petitioners with nontaxable items. Likewise, there is no evidence demonstrating that any of the specific deposits listed by the revenue agent were included in petitioners' income tax return. Koyl's testimony is too vague to be helpful, even if we were to believe it, and there is nothing of a tangible nature supporting a determination favorable to him in whole or in part with respect to such deposits. We must hold, therefore, that petitioners have failed to meet the burden of proof on this issue. See Hoefle v. Commissioner, 114 Fed. (2d) 713, 714, (C.A. 6, 1940) affirming a Memorandum Opinion of this Court. We consider next the question of the taxable gain accruing to petitioners during 1948 from the sale of 157 shares of stock in the corporation to Gene Clark. Respondent determined petitioners' net long-term capital gain resulting therefrom to be $23,872.33, of which 50 *160 per cent was to be taken into account. The only explanation suggested is to be found in the revenue agent's report. At the hearing petitioners conceded in Exhibit 11 that they realized additional taxable net gain from said sale in the amount of $3,219.62. On brief, they maintain, and we agree, that the computation in the revenue agent's report in this respect is erroneous. The report seeks to include in Koyl's selling price a net item of $25,225.54 as unreported dividends from Gene Clark, Inc., during the fiscal year ended April 30, 1948. The amount itself is calculated by the agent on an erroneous basis, as demonstrated by our prior discussion of earnings available for distribution as ordinary dividends and attributable to Koyl as income for the calendar years 1946 and 1947. Respondent's formal determination of a deficiency as to Koyl for 1948 did not include any item of dividends to Koyl, who sold his stock in the early part of that year. We fail to understand on what theory such an item may be deemed to increase selling price in a sale or exchange between two individuals. Moreover, respondent made no determination of a reduction in the basis for Koyl's stock on any theory of a partial *161 liquidating dividend or distribution of capital. Koyl's proportion of dividends for the first eight months of fiscal 1948 have been attributed to him by respondent as income for the calendar year 1947, and we have sustained respondent in principle (but not in the amounts determined) in so doing. We are unable, therefore, to accept respondent's determination of capital gain for 1948 as to this item. However, there being no apparent reason to the contrary, we accept petitioner's concession of additional net gain of $3,219.62, as far as it goes. We must, however, add back the sum of $2,880.86, representing respondent's determination disallowing a claimed short-term loss from the sale of real estate. As explained in the revenue agent's report, the loss was disallowed because it was determined to be the sale of a personal residence, and petitioners have not met the burden of proving error in respondent's determination. Understatement of Income - 1949 For the calendar year 1949, respondent determined that petitioners failed to report additional income consisting of interest income in the amount of $8.07; dividend income of $25,127.93; and long-term capital gain from the exchange of capital *162 assets to be taken into account in the amount of $3,418.05. Petitioners have conceded their failure to report the interest income of $8.07. We turn next to the dividend income item. For the year 1949, respondent, in his statutory notice, determined that Archie Koyl had failed to report informal dividends from Gene Clark, Inc., in the amount of $25,127.93. His approach in making this determination was the same in principle as that employed in computing dividends during fiscal 1947. Here again, since we have reduced the resultant dividend substantially to reflect certain concessions at the trial, and adjustments made by us, we think it would serve no useful purpose to repeat respondent's calculation. In redetermining the computation of the understatement, we use as a starting point the net income before taxes of Gene Clark, Inc., per stipulation (Exhibit 19) for the fiscal year ending April 30, 1949, which was $20,200.60. From this we deduct $19,514.52, representing total Federal taxes, (including accrued deficiency of Gene Clark, Inc., in the amount of $4,550.15 for fiscal 1949, and accrued additions to tax for fraud for fiscal 1948 in the amount of $14,964.37 per stipulation). See *163 Exhibit 18. See also Esther M. Stein; Stern Brothers & Co., both supra. The balance of $686.08 represents earnings available for distribution. Since Koyl owned all of the shares of stock in the corporation after January 29, 1949, three-twelfths of the available earnings for fiscal 1949 (or $171.52) is allocable to Koyl for the calendar year 1949. To this amount, it is then necessary to add eight-twelfths of the amount, if any, available for distribution at the end of fiscal 1950, allocable to calendar 1949. As the net income of the corporation before taxes per stipulation for fiscal 1950 is only $83.71, (Exhibit 19) it is apparent that after accrued penalties for fiscal 1949 in the amount of $2,275.08 (Exhibit 18) are deducted from said amount, there were no funds available for distribution as dividends during fiscal 1950. It follows, therefore, that the full extent of the dividends received by Archie Koyl during 1949 amounts to $171.52. As appears above, respondent determined the dividend to petitioners to be in excess of the above amount, but our adjustments and concessions at the trial reducing the amount of earnings of Gene Clark, Inc., result in the calculation of the dividend *164 of $171.52 as set forth above. Petitioner has failed to meet the burden of proof of error in respondent's determination other than to the extent of the adjustments made by us. No such dividend was reported on the 1949 joint return of Archie and Fawn Koyl. Respondent has determined that Koyl realized long-term capital gain for 1949 in the amount of $6,836.10 of which one-half, or $3,418.05 is to be taken into account. On January 29, 1949, Koyl acquired from Clark 522 shares of Gene Clark, Inc., the value of which was determined by respondent to be $42,478.67, and Clark assumed a mortgage of $5,000 on farm property (transferred to him by Koyl), all of which is set forth in the revenue agent's report received in evidence in explanation of respondent's determination of capital gain. Koyl paid Clark $10,000 in cash and transferred to him assets with a total basis of $30,642.57. Petitioner does not contest the basis of the assets turned over by him to Clark, or the $10,000 paid in cash. The issue arises in relation to the fair market value of the stock which Koyl received in exchange. The valuation of the stock in the amount of $42,478.67 is supported by statements in an "Affirmation of *165 Sale" (Exhibit 2) signed by both Clark and Koyl in which the "net worth" of the stock is stated to be $42,478.67. Petitioner now maintains, however, that the stock was worthless when transferred to him in 1949, and argues in support of this view that in 1953, deficiencies and section 293(b) additions to tax were determined by stipulation (Exhibit 18) against Gene Clark, Inc., for the fiscal years ending April 30, 1947, April 30, 1948 and April 30, 1949, in amounts totalling more than the value of the stock as determined. Petitioner argues that we should relate these deficiencies and additions back to 1949, and, as a consequence, ascertain the fair market value of the stock at the time of its transfer to petitioners to be zero. It is our view that subsequent events such as those urged by petitioner may not be taken into consideration in determining fair market value as of the time of the prior transaction. See Estate of Millie Langley Wright, 43 B.T.A. 551, 555-557 (1941). Even if we were to consider them, however, it would not affect our conclusion on the facts in the instant case. It is apparent from the record that Koyl was aware of what had been going on in the business and that *166 he must have realized at the time he acquired the stock that there was a potential tax liability, although he may have hoped the corporation would escape it. Nevertheless, he undoubtedly believed the stock had substantial value. Otherwise, he would not have transferred to Clark assets with a basis of $30,642.57 and, in addition, pay $10,000 in cash to Clark to acquire the stock and procure Clark's assumption of the $5,000 mortgage. Koyl undoubtedly knew when he acquired the stock from Clark that the earnings of the business had been sizable from the inception of the corporation. The earnings before taxes for the fiscal years ending April 30, 1947 and 1948, as stipulated, were in the respective amounts of $110,087.02 and $89,248.90. Such earnings were large enough to be strongly suggestive of good will or going concern value. They loom even larger when compared to a valuation of $42,478.67 for all of the stock of the corporation. Since the value of the stock adopted by Clark and Koyl was less than half of the earnings of the company during either of the two previous fiscal years, there must have been some depressing influence. It may very well have been the potential tax liability which *167 petitioner now seeks to turn to his advantage. Since respondent adopted as the fair market value of the stock, as of the time of the exchange, the identical amount ($42,478.67) which Clark and Koyl adopted in their "Affirmation of Sale," and Koyl has failed to meet the burden of proving a lesser value, and since the consideration paid and exchanged therefor by Koyl is uncontested, there is no reason to disturb respondent's determination of capital gain. Petitioners did not report the transaction in their return for 1949. Upon the basis of the foregoing discussion, we sustain respondent in his determination that the long-term capital gain to be taken into account is $3,418.05. Decisions will be entered under Rule 50. Footnotes
1. The instant case presents some issues similar to those in Gene O. Clark, et al., v. Commissioner, Docket Nos. 48542, 48543, 48544, in which case Findings of Fact and Opinion are filed simultaneously herewith. The proceedings in the two cases have not been consolidated. What otherwise would appear to be inconsistent results stem from the material differences in the records of the respective cases including differing stipulations of fact.↩